UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ROBERT WILKINS,

          Plaintiff,          Case No. 1:21-cv-793

v.                                        Honorable Phillip J. Green

CORIZON OF MICHIGAN, et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States magistrate judge. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.   Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corizon of Michigan a/k/a Corizon Health Inc., Warden Bryan Morrison, Nurse Practitioner Janette Altenbert, Physician's Assistant Margaret Ouellette, Unknown Party #1 named as John Doe, and Unknown Party #2 named as Jane Doe.

Plaintiff alleges that he was seen by Defendants Unknown Parties #1 and #2 for an infection of his right ear on March 20, 2020, August 23, 2020, and October 2, 2020. Plaintiff asserts that although Defendants claimed to have cured his ear infection, he never actually received any treatment. As a result, both ears became infected and he now suffers permanent damage to his hearing. Plaintiff attaches the results of a hearing test that was conducted on March 8, 2021, which shows that Plaintiff suffers from mild to moderate hearing loss in his left ear and profound hearing loss in his right ear. (ECF No. 1-3.)

Plaintiff alleges that, on February 16, 2021, RN Taylor Schwarz performed a series of examinations and concluded that Plaintiff was not suffering from any impairment. On March 4, 2021, after nearly a year of no treatment, Defendant Altenbert stated that Plaintiff's ear canal appeared normal in color and was pearly, almost translucent. But four days later, on March 8, 2021, Defendant Ouellette

charted that Plaintiff had damage to his left ear. Plaintiff claims that Defendant Altenbert's failure to provide him with treatment is the cause of his hearing loss.

Plaintiff attaches a number of exhibits related to his medical treatment to his complaint. In a Clinical Encounter Note dated October 2, 2020, Amanda Glenn-Okeke, RN, noted that Plaintiff complained of right ear ringing and pain, and stated that he was experiencing fluid in his right ear. Plaintiff told Glenn-Okeke that he had an ear infection to his left ear back in March and was treated with Augmentin at that time. (ECF No. 1-9, PageID.42.) Plaintiff's right ear became infected sometime in March 2020, and was treated with Augmentin; it became infected again in July or August and was treated with seven days of Augmentin, and then ten days of Augmentin because the infection did not clear up. (*Id.*) Plaintiff described the pain to his right ear as tight stabbing pain upon lying down and said that clear liquid with yellow residue was coming out of his ear. (*Id.*) Glenn-Okeke stated that Plaintiff's right tympanic membrane was not visible due to thick green mucus, but his left tympanic membrane was visible and pearly. A culture was taken of Plaintiff's right ear. (*Id.*, PageID.43.)

In another Clinical Encounter Note dated October 2, 2020, with a stamped "See Amendment" on it, Defendant Ouellette states that she was seeing Plaintiff because the RN, presumably Glenn-Okeke, asked her to evaluate Plaintiff's right ear. (ECF No. 1-11, PageID.49.) Defendant Ouellette noted that Plaintiff had failed treatment with Augmentin 875 mg BID and reported a history of recurrent ear infections for the past ten years. Defendant Ouellette noted that the CDC recommended "Rocephin

3

daily x 3 doses," and indicated that she would prescribe Rocephin 1 gm to be injected IM daily for three days. Defendant Ouellette also educated Plaintiff regarding the potential side-effects. (*Id.*) But Plaintiff also attaches the amended Clinical Encounter Note, which is identical to the first note except there is no indication that Plaintiff would be prescribed Rocephin. Instead, a wound culture was ordered for Plaintiff's right ear. (ECF No. 1-12, PageID.52.)

Plaintiff offers a Lab Report dated October 10, 2020, showing the results of the culture of Plaintiff's ear. The report indicates the presence of K. pneumoniae, C. koseri, and Beta-Hemolytic Streptococcus Group B, and states that the Group B Streptococcus showed predictable response to empiric therapy with Penicillin, Ampicillin, and Cefazolin. (ECF No. 1-13, PageID.54-55.)

Plaintiff also attaches a step II grievance appeal response dated March 9, 2021, regarding Plaintiff's complaint of inappropriate care. The step II respondent Subrina Aiken, RN, summarized the February 2, 2021, step I response as follows:

> Upon investigation and review of the Electronic Health Record (EHR), Grievant was seen on 3/20/2020 and treated. Reported everything is fine on 6/16/2020, Grievant was seen on 7/5/2020 for an Annual Health Screen and no issues were reported. Grievant was seen on 8/23/2020 and treated. Grievant was seen 10/2/2020 and was treated. Grievant has not reported permanent hearing loss. Grievant has not sent a Health Care Request (HCR) or had unit Officer call since October of 2020 regarding this issue. Grievance is denied. Your disagreement with the decisions of qualified Medical Provider (MP) does not constitute support for your claim. You shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research. You are being evaluated, treated, have had diagnostic testing conducted and is [sic] being monitored by the MP. The MP is responsible for determining the most appropriate course of treatment for his/her patients taking into consideration all information available. Your medical needs are being met.

4

(ECF No. 1-10, PageID.45.)

In the summary of the step II investigation, Aiken noted that the EHR had been reviewed and that Plaintiff had been seen for his complaints of pain/ringing in his right ear by Nursing, who had referred Plaintiff to the Medical Provider. Aiken stated that Plaintiff had been seen by two different Medical Providers, that his treatment plan had been updated, that he had been approved for an Audicus Audiogram, and that his medical needs were being met as he reported them. Plaintiff's step II grievance appeal was considered resolved. (*Id.*)

Plaintiff filed a step III grievance appeal asserting that "the RNs repeatedly failed to provide him with prescribed antibiotics, and as a result he suffered permanent hearing loss." (ECF No. 1-6, PageID.31.) On March 25, 2021, S. Smoyer, RN, rejected the step III appeal because Plaintiff did not try to resolve the issue with staff by filing a health care kite prior to filing a grievance. (*Id.*, PageID.32.)

In a kite response dated February 12, 2021, Plaintiff was referred for a nursing appointment in response to his complaint that his right ear was constantly ringing and throbbing like a toothache, and that he could not hear out of his right ear. (ECF No. 1-4.)

A February 16, 2021, Clinical Encounter Note indicates that Plaintiff's right ear showed inflammation and cerumen impaction, and that his left ear showed inflammation. In the assessment section, Taylor Schwarz stated "No Impairment/Normal Examination" and noted that Plaintiff had complained of ear

5

pain since his last ear infection. Plaintiff was given three days' worth of Tylenol and released back to his housing unit. (ECF No. 1-5.)

In a Clinical Encounter Note dated March 4, 2021, Defendant Altenbert noted that Plaintiff has a history of allergic rhinitis and took medications from the inmate store daily. Defendant Altenbert further stated that physical examination of Plaintiff's left ear showed a normal color ear canal and tympanic membrane, which was pearly and translucent. Plaintiff's right ear canal appeared red, and the tympanic membrane was dark and non-translucent. Patient denied any pain or feeling of fluid in the right ear. Patient failed whisper test right side. Plaintiff was referred for audiology testing. (ECF No. 1-7, PageID.34.)

On March 8, 2021, Defendant Ouellette created a Clinical Encounter Note, noting that Plaintiff was presenting for a hearing test and that his right ear was abnormal and left ear required some help. Defendant Ouellette stated that the plan was to await the final hearing report. (ECF 1-8, PageID.39.)

A March 30, 2021, CT imaging report of Plaintiff's temporal bone showed that the mastoid air cells were normally aerated bilaterally, there was normal aeration of the middle ear cavity and Prussak's space on each side, and the middle ear ossicles and tympanic membranes appeared intact bilaterally. Plaintiff's external auditory canals were patent and his internal auditory canals were unremarkable in appearance. No acute temporal bone abnormality was seen on either side. But moderate mucosal thickening was seen involving the paranasal sinuses indicative of

6

chronic sinusitis. In addition, a 1.7 cm retention cyst or polyp was seen in the right maxillary sinus. (ECF No. 1-14, PageID.57.)

Plaintiff claims that Defendants violated his rights under the Eighth Amendment, as well as under state law. Plaintiff seeks damages and equitable relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)

(holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Defendants Corizon and Morrison

Plaintiff fails to make specific factual allegations against Defendants Corizon and Morrison other than his claim that they failed to properly train and supervise their employees. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). In addition, a plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that like a municipal corporation, a private health care corporation's "liability must also be premised on some policy that caused a

deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

9

1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Corizon and Morrison encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. Nor has Plaintiff alleged facts showing that decisions regarding his medical treatments were based a policy or custom of Defendant Corizon. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in decisions regarding Plaintiff's medical treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Corizon and Morrison are premised on nothing more than respondeat superior liability, they are properly dismissed.

### B. Defendants Altenbert, Ouellette, and the Unknown Defendants

As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent

10

to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or

11

non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

But not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001);

13

*Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's alleges that he suffered from recurring ear infections in 2020 and 2021. It is apparent from Plaintiff's complaint and the attachments thereto that Plaintiff had a history of ear infections going back ten years (ECF No. 1-11, PageID.49), that he was seen on multiple occasions for his ear infections and was treated with Augmentin on at least three occasions (ECF No. 1-9, PageID.42), that his right ear was subsequently cultured to determine the best course of treatment (ECF Nos. 1-12, PageID.52, and ECF No. 1-13, PageID.54-55), and that Plaintiff was provided with both hearing and diagnostic testing to address his hearing loss (ECF No. 1-7, PageID.34, ECF 1-8, PageID.39, ECF No. 1-14, PageID.57). Although it is clear to the Court that Plaintiff is suffering from the effects of recurrent ear infections, it is also clear that he has received treatment for this condition on numerous occasions.

There are no allegations in Plaintiff's complaint, nor is there information in the exhibits he attaches to that complaint, that suggest any involvement by Defendant Altenbert until she saw Plaintiff on March 4, 2021. (Compl., ECF No. 1, PageID.7) ("On 3/4/2021 at 11:59am, the Plaintiff[] first encounter[ed] Defendant Janette Altenbert . . . ."); (Clinical Encounter Report, ECF No. 1-7). By that time, however, the alleged failure in treatment had already caused the damage of which Plaintiff complains—he had already lost hearing in his right ear and hearing in his left ear had already been compromised. Moreover, Altenbert prompted the hearing test that resulted in Plaintiff's visit with Defendant Ouellette four day later. (*Id.*, PageID.34) ("Provider to place 407 for audiology testing."). Thus, there is nothing in the March 4, 2021, encounter that supports an inference that Defendant Altenbert was indifferent, deliberately or otherwise, to Plaintiff's serious medical need. He has failed to state a claim against her.

Defendant Ouellette, on the other hand, was apparently involved in the treatment of Plaintiff's ear infections from the start. According to Plaintiff, she saw Plaintiff in March and October of 2020, and March of 2021. None of those encounters, however, supports an inference that Defendant Ouellette was deliberately indifferent. During 2020, she prescribed antibiotic treatment on both occasions. Plaintiff does not deny receiving the antibiotics, he simply suggests he should have received more.

15

Plaintiff also claims that Defendant Ouellette initially prescribed Ceftriaxone (Rocephin), an antibiotic given by injection, but then removed that prescription. A comparison of the original and amended Clinical Encounter Reports, however, indicates that the prescription was removed pending a lab report regarding the exudate culture taken from Plaintiff's left ear for the purpose of identifying the bacteria that had infected the ear. (Clinical Encounter Report, ECF No. 1-11; Clinical Encounter Report, ECF No. 1-12.) Moreover, subsequent notes suggest that, after the lab report came back, Plaintiff received some form of antibiotic injections, even if the lab report supported injection of an antibiotic other than Ceftriaxone. (Clinical Encounter Report, ECF No. 1-5, PageID.28) ("My right hear rings constantly. Throbs like a tooth-ache. And I cannot hear out of it. Last I was to see you I was told I was being sent out for it. I also told you *it was worse after the shots I received*.") (emphasis added).

Plaintiff essentially invites the Court to infer that, because Defendant Ouellette failed to "fix" Plaintiff's right ear, she must have been deliberately indifferent. Indeed, that is the basis of his claim against all of the Unknown Defendants as well: "no unknown John or [Jane] Doe medical staff at [L]akeland Corr. Fac., ever treated/fixed the plaintiff's right ear infection, which now makes each unknown John and Jane Doe, personally involved and deliberately indifferen[t] to Mr. Wilkins serious medical needs . . . ." (Compl., ECF No. 1, PageID.6.) Plaintiff offers no authority to support his suggestion that a bad outcome will suffice to establish the subjective component of a deliberate indifference claim.

16

Because Plaintiff has failed to allege facts showing that the named Defendants were deliberately indifferent or that his treatment was 'so woefully inadequate as to amount to no treatment at all," *Mitchell*, 553 F. App'x at 605, his Eighth Amendment claims are properly dismissed.

### C. State law claims

Plaintiff claims that Defendants were grossly negligent with regard to the treatment of Plaintiff's ear infections. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should

consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims against Defendants will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's state law claims against Defendants will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445

(1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 7, 2022              /s/ Phillip J. Green
                                                                PHILLIP J. GREEN
                                                                United States Magistrate Judge